**UNITED STATES**

v.

**David C. CALLOWAY, 464 87 5620, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 96 00801.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 29 Nov. 1995.

Decided 14 Jan. 1998.

LT J.L. Eichenmuller, JAGC, USNR, Appellate Defense Counsel.

Maj Richard W. Koeneke, USMC, Appellate Government Counsel.

Before CLARK, Senior Judge, SEFTON and WYNNE, Appellate Military Judges.

CLARK, Senior Judge:

At his special court-martial, a panel of members convicted the appellant, contrary to his pleas, of assaulting a superior noncommissioned officer, willfully disobeying a noncommissioned officer, and being disrespectful in language toward two superior noncommissioned officers who were in the execution of their offices. The convening authority approved the appellant's adjudged sentence of confinement for 6 months, forfeiture of $569.00 pay per month for 3 months, reduction to pay grade E–1, and a bad-conduct discharge.

The appellant has submitted eight assignments of error for this court to consider.[1] We find merit in his first assignment of error, concerning the violation of his right to a speedy trial under Article 10, Uniform Code of Military Justice, 10 U.S.C. § 810 (1994) [hereinafter UCMJ].

1. I. THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE MOTION TO DISMISS FOR LACK OF SPEEDY TRIAL PURSUANT TO ART. 10, UCMJ.

II. THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE REQUIRED THE DEFENSE COUNSEL TO COME TO AN AGREEMENT WITH THE TRIAL COUNSEL OVER THE CHRONOLOGY OF THE TRIAL BEFORE HE WOULD ADJUDICATE APPELLANT'S MOTION TO DISMISS FOR LACK OF SPEEDY TRIAL.

III. APPELLANT WAS DENIED HIS RIGHT TO SPEEDY TRIAL WHEN HE WAS NOT BROUGHT TO TRIAL UNTIL 29 NOVEMBER 1995, 131 DAYS AFTER APPELLANT WAS PLACED IN PRETRIAL CONFINEMENT ON 21 JULY 1995, BECAUSE THE 39(a) SESSION ON 14 NOVEMBER 1995 CALLED BY GOVERNMENT TO ARRAIGN APPELLANT WAS A "SHAM ARRAIGNMENT" TO STOP THE SPEEDY TRIAL CLOCK SINCE THE GOVERNMENT WAS NOT PREPARED TO PROCEED TO TRIAL, AND VIOLATED THE SPIRIT OF R.C.M. 707, AND THE LETTER AND SPIRIT OF ARTICLE 10, UCMJ. (Citations omitted.)

IV. THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE FAILED TO DETERMINE FACTU-ALLY AND LEGALLY WHETHER UNLAWFUL COMMAND INFLUENCE RESULTED IN THE CONVENING AUTHORITY'S WITHDRAWAL FROM HIS PRETRIAL AGREEMENT WHEN A PRIMA FACIE SHOWING OF UNLAWFUL INFLUENCE WAS DEMONSTRATED.

V. THE MILITARY JUDGE ERRED BY FAILING TO REMEDY THE FACT THAT THE CONVENING AUTHORITY IMPROPERLY WITHDREW FROM THE PRETRIAL AGREEMENT.

VI. THE EVIDENCE IS FACTUALLY INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION TO CHARGE I, SPECIFICATION 1 BECAUSE THE EVIDENCE RAISED A REASONABLE DOUBT THAT THE APPELLANT ACTED IN SELF DEFENSE AND THAT STAFF SERGEANT JACKSON ABANDONED HIS RANK.

VII. THE SENTENCE TO UNSUSPENDED CONFINEMENT FOR SIX MONTHS, A PUNITIVE DISCHARGE, REDUCTION TO E–1 AND FORFEITURES IS INAPPROPRIATELY SEVERE FOR THIS OFFENDER AND HIS OFFENSES.

VIII. THE RECORD DEMONSTRATES THAT THE CONVENING AUTHORITY DID NOT CONSIDER CLEMENCY MATTERS SUBMITTED BY APPELLANT PRIOR TO TAKING ACTION AS REQUIRED BY LAW.

## Evidence In The Speedy Trial Motion

The parties to the court-martial stipulated to a chronology of events which was attached to the record of trial as Appellate Exhibit IV and which we have appended as Appendix 1. In addition to the stipulated chronology, evidence presented on the motion included the Military Justice Docket for August 14 to September 22, 1995, and the Military Justice Report for 14 August 1995, Appellate Exhibit VII, as well as the Military Justice Docket of August 28 to October 6, 1995, and the Military Justice Report for 28 August 1995, Appellate Exhibit VIII. *See also* Appellate Exhibit II (containing Military Justice Dockets for October 2 to November 10, 1995, October 16 to November 24, 1995, October 23 to December 1, 1995, and November 6 to December 15, 1995).

## Essential Findings

■ Where factual issues are involved in determining a motion, the military judge is required to state the essential findings on the record. RULE FOR COURTS–MARTIAL 905(d), MANUAL FOR COURTS–MARTIAL, UNITED STATES (1995 ed.) [hereinafter R.C.M.]. Even if the evidence presented shows that no facts are in dispute, such facts must be stat-

ed in the essential findings if they support the ruling. *United States v. Postle*, 20 M.J. 632, 640 (N.M.C.M.R.1985).

█ In announcing his denial of the motion to dismiss for lack of a speedy trial, the military judge entered essential findings, Record at 35–37, which we have included as Appendix 2. We take issue with some of these essential findings, not merely because they are more statements of conclusions rather than facts, but also because the essential findings do not address relevant facts that were adduced in the evidence on the motion.

What the military judge characterized as "brief periods of inactivity in an otherwise active prosecution" were not brief and the prosecution of the case was not active. First, the appellant spent 20 days in pretrial confinement before **any** action was taken on his case. After his confinement on 21 July 1995, the first action on his case was the receipt of the Request for Legal Services, on 10 August 1995. Second, a week passed before any further action was taken on the case, when the Military Justice Officer reviewed it. Third, more than a month—34 days—passed before the next action on the case, which was preferral of the charge. Fourth, although a "brief" period of only 5 days passed between preferring the charge and delivering the charge to the defense section, there is no reasonable explanation as to why the appellant spent more than 2 months—66 days—in pretrial confinement before a defense counsel was assigned to him.

Two days after the appellant was assigned a defense counsel, his case was docketed to go to trial on 30 October 1995—33 days later.[2] Fifth, after the case was docketed, a week passed before the charge was received by the Summary Court–Martial Officer. The very next day the charge was referred and the appellant was informed of the charge against him. Sixth, although the delay between receipt of the charge by the summary court-martial officer and the appellant being informed of the charge against him was brief, we find it significant that the appellant was informed of the charge 76 days after being placed in pretrial confinement. Seventh, although the military judge redocketed the case three times before the prosecution took any further action, the next action toward prosecution of the case was service of the referred charge upon the accused, which occurred 22 days after the charge was referred. Eighth, the next action toward prosecution of the case occurred 18 days after the appellant was served, when he was arraigned—115 days after being placed in pretrial confinement.

The military judge's conclusion, that there was no evidence "that the government could have readily gone to trial much sooner than the dates assigned by the military judge, but negligently, or spitefully, chose not to do so," is in conflict with the evidence in the record. Between 27 September 1995, when the appellant's case was first docketed to be tried 33 days later,[3] and when he was actually arraigned, 47 days later, more than a dozen other cases were docketed. Appellate Exhibits II, VIII. Of these, no more than two of the accuseds were in pretrial confinement. *Id.* At least two of those who were not in pretrial confinement had charges preferred after the appellant was confined. *Id.* Several others were not even listed on the Military Justice Reports which were admitted on the motion, indicating that they were possibly "walk-ins."[4] *Id.* Among the cases docketed ahead of the appellant's, several were con-

2. We note that the military judge assumed control of the case by docketing it on 27 September 1995. This was 8 days before the charge was referred, on 5 October 1995. The court-martial which eventually tried the appellant had no jurisdiction to take any action on the case at the time that the military judge docketed it. R.C.M. 201(b)(3). The military judge did not explain by what authority he took action which could be construed as further delaying the trial, or even buttressing the government's case for compliance with Article 10, UCMJ, 10 U.S.C. § 810 (1994).

3. From the time that the charges were referred and the appellant was informed of them, 39 days elapsed before he was arraigned.

4. "Walk-ins" are cases which may not have gone through the usual military justice administrative procedures, but, because of lack of complexity, ready availability of witnesses, willingness of both parties to get it done, eagerness to make a deal, or other incentives, can be scheduled for the earliest available court date.

tested drug cases. *Id.* Although the fact that these cases were tried before the appellant's does not establish that the Government could have tried the appellant's case earlier, it is some evidence that the appellant's case was given a much lower priority than Article 10, UCMJ, 10 U.S.C. § 810, permits for a pretrial confinee. The priority given other cases creates an impression of foot-dragging that should have been, at least, addressed in the military judge's essential findings.

The military judge's conclusion that the Government proceeded with reasonable diligence is not supported by the evidence. There is no evidence explaining why, during the first 20 days of the appellant's pretrial confinement, the Government did absolutely nothing with a view toward prosecution. There is no evidence explaining why, after the military justice officer reviewed the case, it took 34 days for the charge to be preferred. There is no evidence explaining why the appellant was not provided a defense counsel until he had been in pretrial confinement for 66 days. There is no evidence explaining why the appellant's case was first docketed to be tried 33 days later, while cases with less due process urgency were scheduled to be tried earlier. There is no evidence explaining why the appellant was not informed of the charge against him until he had been in pretrial confinement for 76 days. There is no evidence explaining why the appellant was not served with the charge until 22 days after it was referred. There is no evidence explaining why, after the appellant was served, he was not arraigned until 18 days later.

The stipulation of facts includes several dates labeled as "Court open," without further explanation. Several dates indicate that the military judge or the defense counsel was on temporary additional duty. Yet other dates indicate that the case was redocketed by the military judge, without explanation or reason offered. Two days seems to have been set aside for observances of the Marine Corps Birthday ceremonies. On another day, the military justice officer and the defense counsel discussed the case with the convening authority, and 2 days later the military justice officer again discussed the case with the convening authority. All of these events might have contributed to the delays, however, without an explanation as to how they contributed to the delays, we are unable to find support for the military judge's conclusion of reasonable diligence.

The prejudice suffered by the appellant is self-evident in the fact of his confinement. He has been deprived of his liberty for 115 days. Our supervisory court has stated that "3 months is a long time to languish in a brig awaiting an opportunity to confront one's accusers[.]" *See United States v. Kossman,* 38 M.J. 258, 261 (C.M.A.1993). We perceive that the 115 days that the appellant languished in the brig was longer than Congress considers appropriate, when there was no showing of a reasonably diligent effort by the government to bring him to trial, or even to inform him of the charges against him. We perceive a lack of reasonable diligence in the appellant's case.

### The Right To A Speedy Trial Under Article 10

In his essential findings, the military judge placed considerable emphasis upon R.C.M. 707 and its requirement for excluding from consideration delays which are not attributable to the Government. Although he stated his recognition that an accused's Article 10, UCMJ, 10 U.S.C. § 810, right to a speedy trial exists separately from and is superior to the provisions of R.C.M. 707, nevertheless, the military judge proceeded to apply a R.C.M. 707 analysis to the delay between the appellant's confinement and his trial.

■ Article 10, UCMJ, 10 U.S.C. § 810, requires that "[w]hen any person subject to this chapter is placed in ... confinement prior to trial, **immediate** steps shall be taken to inform him of the specific wrong of which he is accused and to try him...." (Emphasis provided.) We agree with the court of criminal appeals of our sister sea service that, when the defense raises a motion to dismiss for lack of speedy trial under Article 10, UCMJ, 10 U.S.C. § 810, the prosecution has the burden of proof to establish that such immediate steps were taken. *See United States v. Laminman,* 41 M.J. 518, 521 (C.G.Ct.Crim.App.1994) (the military judge properly found lack of reasonable diligence

where there was no evidence proffered to explain delays in preferring charges, detailing defense counsel, appointing an Article 32 investigating officer, or setting an initial Article 32 hearing date.).[5] Since the Government presented no evidence to explain, *inter alia*, the delay of 20 days before any steps were taken toward prosecution, the delay of 66 days before the appellant was assigned a defense counsel, and the delay of 76 days before the appellant was informed of "the specific wrong of which he [was] accused," Article 10, UCMJ, 10 U.S.C. § 810, the military judge was without evidence to conclude that the Government acted with reasonable diligence during these periods. *See Laminman*, 41 M.J. at 523. Therefore, his conclusion that the government proceeded with reasonable diligence is not fairly supported by the evidence of record.

## Deficiencies in the Evidence and in the Essential Findings

■ We recognize, as did our supervisory court in *Kossman*, 38 M.J. at 261, that military trial judges may be "far more sensitive than we are to the realities of military practice." *See also United States v. Hatfield*, 44 M.J. 22, 23 (1996) (the military judge did not abuse his discretion in concluding that 106 days of pretrial confinement constituted "an excessively long time to shepherd this uncomplicated and unproblematic case to trial."). Although we are experienced as military judges and in other aspects of the military justice system, we presume no more sensitivity to existing military justice trial practices than do the judges of our supervisory court. Nevertheless, where the military judge has peculiar knowledge of the circumstances purportedly warranting delays in bringing an accused to trial, such knowledge must be made a part of the record when the issue is raised in a motion to dismiss under Article 10, UCMJ, 10 U.S.C. § 810.

In the appellant's case, the stipulation of fact contains numerous indications as to the unavailability of the military judge and the state of the military judge's docket. The evidence does not establish the unavailability of other military judges or why certain other less urgent cases were given priority over that of the appellant's on the docket. In the absence of such evidence we find that the prosecution failed in its burden of proof to show that it took immediate steps to inform the appellant of his charge, to try him, or to release him from confinement. The military judge's conclusions to the contrary are without supporting evidence in the record.

As in *Hatfield*, 44 M.J. at 23, the appellant's was an "uncomplicated and unproblematic case." The appellant had a confrontation with two of his noncommissioned officers. As a result of this incident, the appellant was treated at the hospital for injuries sustained. Record at 194; Defense Exhibit G. The appellant claimed that an NCO had assaulted him, and reported the incident to the Provost Marshal's Office. Record at 191, 195; Defense Exhibit F. The next day the appellant was confined.[6] The witnesses were all in the immediate area. The principal prosecution witnesses provided statements on the day of the incident—before the appellant was confined. Defense Exhibits A–E. There were no complicated evidentiary issues, legally or logistically. The charge sheet consisted of a single charge of violations of Article 91, UCMJ, 10 U.S.C. § 891, alleging five specifications. The Government offered no evidence to explain why, with the case practically perfected before the appellant was even confined, it took 61 days to prefer such a simple charge, while the appellant was languishing in the brig.

The military judge in the appellant's case did not address in his essential findings two

---

5. *United States v. Laminman* resulted from an interlocutory appeal by the Government brought under Article 62, UCMJ, 10 U.S.C. § 862. The reviewing court was limited to acting only with respect to matters of law. *United States v. Burris*, 21 M.J. 140, 143–44 (C.M.A.1985). This court is not so constrained under the mandate of Article 66(c), UCMJ, 10 U.S.C. § 866(c).

6. This situation has an appearance of "circling the wagons," or what has been referred to as the "NCO Protection Society." However, we will not presume from this appearance the existence of any spite on the part of the Government. We base our holding on a finding of negligence. *See Kossman*, 38 M.J. at 261.

matters which the Court of Appeals for the Armed Forces noted as significant in *Hatfield*, 44 M.J. at 23–24—the overall lack of forward motion in the case and the delay in appointment of defense counsel. Most of the military judge's essential findings relate to his R.C.M. 707 analysis of accountability for delays. Although the reasons for the delays are valid factors to consider in an Article 10, UCMJ, 10 U.S.C. § 810, analysis, the reasons are relevant in determining whether the Government has proceeded with reasonable diligence regardless of which party is responsible for the delay. Article 10, UCMJ, 10 U.S.C. § 810, makes no provision for excusing the government from the standard of reasonable diligence because the delays "accommodate the [military judge's] trial schedule." Appendix 2. Even where delay is approved by the military judge, the Government must still show reasonable diligence under an Article 10, UCMJ, 10 U.S.C. § 810, analysis.

█ In the appellant's case, the military judge found certain periods of delay "excludable" because he had approved them. Article 10, UCMJ, 10 U.S.C. § 810, does not include a provision for a military judge to relieve the Government of the burden of proving it proceeded with reasonable diligence when an accused is in pretrial confinement. In the appellant's case, the military judge did relieve the government of the burden of proof of reasonable diligence as to some of the delays by findings which said, in effect, "I approved it, so it's all right."

█ The Government is not relieved of its responsibility under Article 10, UCMJ, 10 U.S.C. § 810, merely because a specific military judge is not readily available to conduct an accused's trial. The Government has the option of releasing the accused from confinement, and the stipulated chronology shows no reason why the appellant could not have been released.

Furthermore, the military judge did not attach any significance to the delay in assigning the appellant a defense counsel. We do. The military judge is not presumed to have any peculiar knowledge concerning the detailing of military defense counsel. We are just as familiar with the process for detailing defense counsel to a military accused as is the military judge.

With regard to pretrial confinement, the military justice system differs from its civilian counterpart in two significant ways: (1) there is no provision for bail; and (2) the Government controls assignment of military defense counsel. Unlike some other jurisdictions, in the military the Government controls a military accused's right to have a defense counsel assigned by its administrative procedures in a prosecution. In the appellant's case, the Government did not take the first administrative steps which would entitle the appellant to having a defense counsel detailed until after the appellant had been confined for 61 days. Five days later a defense counsel was detailed to represent the appellant. This delay was a significant factor relating to whether the Government had proceeded with reasonable diligence. The military judge did not even mention it in his essential findings. This omission further erodes our confidence in the propriety of the military judge's conclusions.

We recognize that military judges must be given some degree of discretion in determining "whether the Government has been foot-dragging on a given case[.]" *Kossman*, 38 M.J. at 262. In exercising that discretion, the military judge must make essential findings that are fairly supported by the evidence in the record. We find that some of the findings of fact made by the military judge in this case are not fairly supported by the evidence. The Government did not carry its burden of establishing by a preponderance of the evidence that it had proceeded with reasonable diligence to inform the appellant of the charge against him and to bring him to trial. We attribute the delays to negligence, rather than to spitefulness on the part of the Government.

We find that the military judge abused his discretion in denying the motion to dismiss the charge for lack of a speedy trial. We reverse his ruling on the motion. Because we find merit in the first assignment of error, we do not need to decide the remaining issues. The findings and the sentence are set aside. The charge is dismissed.

788

Judge SEFTON and Judge WYNNE concur.

## APPENDIX 1

### CHRONOLOGY

| | |
|---|---|
| 21 July 95: | Accused placed in pretrial confinement. |
| 31 July - 18 Aug 95: | Military Judge on leave. |
| 10 Aug 95: | Request for Legal Services (RLS) received from MCCES. |
| 17 Aug 95: | Case review by Military Justice Officer (Major Zelnis). |
| 18 Sept 95: | Case review by Trial Counsel (Captain Kitchin) |
| 20 Sept 95: | Article 91 charge Preferred |
| 25 Sept 95: | Defense Shop receives charges - Captain Bruzzo assigned as defense counsel. |
| 25–26 Sept 95: | Military Judge TAD to MCB Barstow |
| 27 Sept 95: | Case docketed for 30 Oct 95 |
| 28–29 Sept 95: | Military Judge TAD to MCAS Yuma |
| 2–6 Oct 95: | Defense Counsel TAD to Camp Pendleton |
| 4 Oct 95: | Charges received by Summary court-martial Convening Authority. |
| 5 Oct 95: | Charges Referred Accused informed of the charges against him |
| 10–11 Oct 95: | Court open |
| 12 Oct 95: | Case redocketed for 27 Oct 95 per order of Military Judge. |
| 16–20 Oct 95: | Court open |
| 19 Oct 95: | Case redocketed for 3 Nov 95 per order of Military Judge. |
| 26 Oct 95: | Case redocketed for 27 Nov 95 per order of Military Judge. |
| 27 Oct 95: | Charges served upon the accused. Court open |
| 3 Nov 95: | Court open |
| 6–9 Nov 95: | Military Judge TAD (Judges Conference) |
| 7 Nov 95: | Military Justice Officer (Captain Geffroy) and defense counsel meet with Convening Authority to discuss case. |
| 9 Nov 95: | Military Justice Officer discusses case with Convening Authority. |
| 9–10 Nov 95: | Marine Corps Birthday Ceremonies |
| 14 Nov 95: | Accused's arraignment (DAY 115) |
| 15 Nov 95: | Defense Counsel submits GOS/OTH request to Commanding General, MCAGCC. Accused released from pretrial confinement. Case docketed for 20 and 21 Nov 95. |
| 17 Nov 95: | GOS/OTH request disapproved by Commanding General. |
| 20 Nov 95: | Defense Counsel requests continuance. Defense counsel serves copy of motions to Military Justice Officer. Military Justice Officer and defense counsel meet with Commanding Officer, MCCES to discuss defense's PTA offer. PTA signed by Convening Authority. |
| 21 Nov 95: | Government withdraws from pretrial agreement. |
| 22 Nov 95: | 39(a) session - motions. |

## APPENDIX 2

### ESSENTIAL FINDINGS

In that regard, the court finds by the preponderance of the evidence standard:

Under R.C.M. 707(a)(1) an accused must be brought to trial within 120 days after preferral of charges, or the imposition of pretrial confinement, whichever occurs first. In the accused's case, the R.C.M. 707(a) clock started ticking on 21 July 1995 when the accused was initially placed in pretrial confinement.

That, according to the provisions of R.C.M. 707(a), pretrial delays approved by the military judge or convening authority are excludable when determining whether the provisions of subsection (a) of this rule have run.

That the accused's rights to a speedy trial under Article 10 exist separately from, and are superior to[,] the provisions of R.C.M. 707.

That in order to decide if a violation of the accused's right to a speedy trial under Article 10 has occurred, the court must balance four factors: 1) the length of the pretrial delay, 2) the reasons for the pretrial delay, 3) whether there was a demand for a speedy trial, and 4) the prejudice suffered by the accused because of the delay, with a special emphasis being made as to whether the accused has demanded a speedy trial.

That the days between the accused's initial date of pretrial confinement, and the accused's arraignment equal 115 days. Of those 115 days, the court finds the time between the 27th of October and the 14th of November 1995, the date this case was docketed by the military judge, and the date of arraignment, as a delay approved by the military judge to accommodate his trial schedule, and are not allocated to the government's time clock. This leaves the government accountable under R.C.M. 707(a) for 98 days under the R.C.M. 707(a) speedy trial clock, which is within the 120 days of this rule.

The court finds that the defense has never requested a speedy trial in this case, that this case has been redocketed three times per order of the military judge due to administrative management of the military justice docket, and to accommodate the military judge's trial schedule.

That the time between arraignment on the 14th of November, until the latest date this case was set for trial, is approved delay by the military judge, and is excludable for the period of computation.

That the period of 20 November through the 22d of November is likewise excludable as approved time by the military judge.

That the stipulated facts in the chronology in this case shows [sic] brief periods of inactivity in an otherwise active prosecution.

That there has been no evidence adduced on this motion which demonstrates that the government could have readily gone to trial much sooner than the dates assigned by the military judge, but negligently, or spitefully, chose not to do so.

That the government has proceeded in this case with reasonable diligence.

That the accused has suffered no undue prejudice in this case as a result of any actions by the government in bringing this case to trial.

That, based on a preponderance of the evidence, the court finds no violation of R.C.M. 707 or Article 10 of the Uniform Code of Military Justice, and therefore, the motion to dismiss all of the charges [sic] and specifications, with prejudice, for lack of speedy trial is denied.