**UNITED STATES, Appellant,**

v.

**Gregory J. COOPER, Seaman (E–3), U.S. Navy, Appellee.**

**NMCM 200101867.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Decided 8 March 2002.

LT C.J. Gramiccioni, JAGC, USNR, Appellate Government Counsel.

LT Hardy Vieux, JAGC, USNR, Appellate Defense Counsel.

LT Kevin B. Gerrity, JAGC, USNR, Individual Military Counsel.

LT James E. Golladay II, JAGC, USNR, Detailed Defense Counsel.

ANDERSON, Senior Judge:

The appellee was charged at a general court-martial with conspiracy to distribute ecstasy, unauthorized absence, wrongful distribution of ecstasy, four specifications of wrongful use of a controlled substance, and obstruction of justice in violation of Articles 81, 86, 112a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 886, 912a, and 934. After arraignment, the appellee moved to dismiss the charges for lack of speedy trial under Article 10, UCMJ. The military judge dismissed all charges with prejudice. The United States filed a timely notice-of-appeal pursuant to Article 62(a)(2), UCMJ, 10 U.S.C. § 862(a)(2), and RULE FOR COURTS-MARTIAL 908(b)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.). We reverse.

### Facts

On 14 March 2001, the appellee was ordered into pretrial confinement for suspected drug offenses and unauthorized absence. A pretrial confinement review hearing was held on 19 March 2001. The charges before the magistrate at the hearing included conspiracy to possess and distribute ecstasy, unauthorized absence, possession and distribution of ecstasy, and obstruction of justice. During the hearing, the appellee was represented by counsel for the limited purpose of the pretrial confinement proceedings. At the conclusion of the hearing, the magistrate determined that the continuance of pretrial confinement was necessary. On 5 April 2001, the Naval Legal Service Office North Central (NLSO) detailed defense counsel for the appellee. On 10 April 2001, charges were preferred. The next day, the appellee's command, apparently unaware that counsel had already been assigned, requested in writing that counsel be assigned.

During the next 30 days, the Naval Criminal Investigative Service continued its investigation into the charges. In addition, an Article 32, UCMJ, pretrial investigation was directed,[1] and the Government responded to a number of defense requests. On 14 May 2001, the defense requested the assignment of an individual military counsel (IMC). That request was denied on 18 May 2001.

On 24 May 2001, the Article 32, UCMJ, investigation was held. At the investigation, the defense objected to the IMC denial, but no relief was granted. On 8 June 2001, the investigating officer (IO) completed his report, and, on 20 June 2001, he faxed his report to the trial counsel. On 25 June 2001, the staff judge advocate completed her Article 34, UCMJ, 10 U.S.C. § 834, pretrial advice letter to the convening authority, and consistent with the IO's recommendation, charges were referred that day to a general court-martial. On 3 July 2001, the defense renewed its request for the IMC in a letter to the convening authority and a motion to the court. The defense also submitted a speedy-trial motion to the court.

The appellee was arraigned on 6 July 2001, 114 days after his confinement began. The defense raised several motions. In the first motion, the defense asked the military judge to set aside the Article 32, UCMJ, investigation and order a new one, based primarily on the IMC denial and the failure of the IO to summarize the testimony of two witnesses. In the second motion, the defense requested that the military judge create a record and make findings on the IMC denial. In the third motion, the defense requested that the military judge dismiss the charges for lack of speedy trial under Article 10, UCMJ, 10 U.S.C. § 810.

On 9 July 2001, an Article 39(a), UCMJ, session was conducted to hear the defense motions. During that session, the military judge heard the IMC motions first and found that the defense request for an IMC had been improperly denied. He ordered the convening authority to forward the IMC request to an appropriate commander for dis-

---

1. The first officer detailed as investigating officer had a potential conflict of interest, and based on a defense request, a second investigating officer was detailed.

position. In addition, he stated that if the IMC request was granted, the IMC may wish to present further information to the investigating officer, and he ordered that the Article 32, UCMJ, investigation be reopened. He also found that the report of investigation failed to contain the summaries of two witnesses. With respect to the speedy-trial motion, the detailed counsel then chose to defer litigating it, seeking instead to wait for the presence of the IMC. The military judge then granted a continuance until the IMC and Article 32, UCMJ, issues were resolved.

On 16 July 2001, the IMC request was approved. On 23 July 2001, the detailed defense counsel was allowed to remain on the case as assistant defense counsel. Because the IO was deployed overseas until 6 August 2001, the Article 32, UCMJ, investigation, was rescheduled for 10 August 2001. On 10 August 2001, the Article 32, UCMJ, investigation was reopened and completed. No new substantive matters were presented, and on 13 August 2001, in an addendum to the report of the first Article 32, UCMJ, investigation, the IO once again recommended referral to a general court-martial. On 24 August 2001, the convening authority reaffirmed his referral of the same charges that had been initially referred against the appellee.[2] On 30 August 2001, a new military judge was detailed to the case, but he recused himself *sua sponte* one day later. On 7 September 2001, a third military judge was detailed to the case. On 20 September 2001, because of some documentary omissions in the Article 32, UCMJ, investigation report, the convening authority once again reaffirmed his referral of the same charges against the appellee,[3] and an Article 39a, UCMJ, 10 U.S.C. § 839a, session was scheduled for 26 September 2001. On that day, the speedy-

trial motion was litigated. The next day, 27 September 2001, the military judge granted the motion and dismissed the charges.

### Standard of Review

▌ Under Article 10, UCMJ, "[w]hen any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." Under this speedy-trial provision, the Government is required to exercise "reasonable diligence" in bringing charges to trial. *United States v. Kossman*, 38 M.J. 258, 262 (C.M.A.1993). Constant motion is not required, and short periods of inactivity in an otherwise active case are not unreasonable. *Id.* In evaluating whether a military judge's determination that the prosecution did not proceed to trial with reasonable diligence was correct, we apply an abuse-of-discretion standard. *United States v. Hatfield*, 44 M.J. 22, 24 (1996).

### Discussion

In dismissing the charges, the military judge found fault with three periods of Government delay: 28 days for the Government to request that defense counsel be detailed to the case; 12 days for the IO to deliver to the trial counsel his Article 32, UCMJ, investigation report; and 32 days for the Government to reopen the Article 32 hearing. We reexamine the delays.

▌ With respect to the 28 days of delay, although the appellee's command did not request the detailing of defense counsel until 28 days after he was confined, the appellee was actually provided counsel by the NLSO on day 22.[4] In addition, during this time period,

2. To document this reaffirmation, the previous referral block was lined out on the charge sheet and a new referral block was added.

3. Again, to document this reaffirmation, the previous referral block was lined out on the charge sheet and a new referral block was added. The military judge found that the two reaffirmations of referral were "administrative in nature" and did not restart the R.C.M. 707 speedy trial clock that had stopped upon arraignment on 6 July 2001. Record at 290–91.

4. After the tenth day of pretrial confinement, the NLSO, which is the defense command, "shall" assume that the charges upon which the accused was placed in pretrial confinement will be referred to trial by special or general court-martial and "shall" detail defense counsel. Commander, Naval Legal Service Command Instruction 5800.1D, Enclosure (1), ¶ 1103f(3)(18 Jun 97). On 19 March 2001, the NLSO was obviously aware that the appellee was in pretrial confinement, because a NLSO counsel represented him at the magistrate's hearing (for the limited pur-

the Government was actively continuing the investigation into the alleged offenses. Once charges were preferred, the appellee's command requested counsel the following day. Although this delay in appointing counsel was regrettable, we do not find it to be unreasonable under the circumstances.[5]

■ With respect to the 12 days between the date that the first Article 32, UCMJ, investigation report was signed and the date of its receipt by trial counsel, the Government provided no explanation for this delay, and no evidence was introduced as to any activity that took place during that period of time. Nonetheless, we do not find this 12 days of delay unreasonable in view of the expeditious completion of the Article 34, UCMJ, advice letter and referral of charges that occurred a mere 5 days later.

■ With respect to the 32 days of delay between the arraignment and the reopening of the Article 32, UCMJ, investigation, we find that this post-arraignment delay was not attributable to the Government for speedy-trial purposes. Once the arraignment occurred, the speedy-trial clock stopped with respect to an Article 10, UCMJ, analysis, because the appellee had been brought to trial at that point. *See* R.C.M. 707(b)(1); *Kossman*, 38 M.J. at 261 n. 3. If the appellant believed that the delay was excessive, he could have made a motion for appropriate relief to the military judge.[6] *See United States v. Doty*, 51 M.J. 464, 464–65 (1999)("In

fact, arraignment serves to protect an accused's rights. After arraignment, the power of the military judge to process the case increases, and the power of the convening authority to affect the case decreases.").

Even assuming *arguendo* that this delay is attributable to the Government, we do not find it unreasonable. First, most of the delay was attributable to the deployment overseas of the IO who presided over the original Article 32, UCMJ, investigation. In order to reduce any possible delay resulting from this military exigency, the Government offered the defense the opportunity to conduct the hearing by telephone. This offer was rejected. In addition, during this 32–day period, the appellee's IMC request was processed. Seven days elapsed before the IMC was appointed and an additional 7 days elapsed for the appointment of an assistant defense counsel. Under these circumstances, we do not find the 32 days of delay to be unreasonable.[7]

■ Finally, even considering all of the three periods of delay collectively, we conclude that the Government did not "negligently or spitefully" choose to delay this trial. *Kossman*, 38 M.J. at 261. This case involves: (1) a complicated drug conspiracy involving a large number of Sailors; (2) logistical problems stemming from defense counsel and many witnesses being located far from the situs of the trial;[8] and (3) opera-

pose of representing him at the pretrial confinement proceedings).

5. This case differs from *United States v. Hatfield*, 44 M.J. 22 (1996), where "forward motion" on a "relatively simple" case and assignment of counsel for an accused in pretrial confinement was delayed for 48 days merely because of some missing paperwork. *Hatfield*, 44 M.J. at 24. It also differs from *United States v. Calloway*, 47 M.J. 782 (N.M.Ct.Crim.App.1998), where the accused spent 20 days in pretrial confinement before any action on "a simple charge" was taken and 66 days in pretrial confinement before a defense counsel was actually assigned. *Calloway*, 47 M.J. at 786. Although the military judge in the appellee's case cited to *Calloway* in his ruling (Record at 293), he quoted from *United States v. Geraci*, No. 200000865, 2001 WL 301140 (N.M.Ct.Crim.App. 12 Feb. 01)(unpublished op.)(slip op. at 3 n. 5). In *Geraci*, the accused spent nearly 52 days in pretrial confinement before a defense counsel was assigned, but

the court found no Article 10, UCMJ, violation, because it was satisfied that the Government had exercised reasonable diligence in moving the charges to trial. *Geraci*, slip op. at 3.

6. In fact, after arraignment, but prior to the reopening of the original investigation, the appellee did bring a motion for appropriate relief to the military judge requesting a new IO and a new Article.32, UCMJ, investigation. Appellate Exhibit XLIII. No request for an expedited investigation, however, was made.

7. After ordering the reopening of the Article 32, UCMJ, investigation, the military judge granted a continuance, noting that the completion of the Article 32, UCMJ, investigation may take two to three weeks.

8. The IMC was stationed in Texas; the detailed counsel was stationed in Washington, D.C.; some of the witnesses were located in brigs in

tional necessities, to include the deployment of the IO overseas, and the significant increase in the number of courts-martial, nonjudicial punishments, and administrative separations occasioned by a major drug ring uncovered at a key training command. *See Kossman,* 38 M.J. at 261–62 ("Some cases are obviously more convoluted than others and necessarily take longer to process. In addition, the logistical challenges of a worldwide system that is constantly expanding, contracting, or moving can at times be daunting. Often operational necessities add a further layer of complexity unimagined by the civilian bar. Even ordinary judicial impediments, such as crowded dockets, unavailability of judges, and attorney caseloads, must be realistically balanced."). We find that the Government acted with reasonable diligence in bringing the appellee to trial. Despite some brief delays, those delays were not unreasonable or oppressive in an otherwise active prosecution. The appellee was not denied his right to a speedy trial under Article 10, UCMJ.

### Conclusion

We hereby reverse the military judge's ruling on the motion to dismiss for lack of speedy trial under Article 10, UCMJ, and return the record to the military judge for further proceedings.

Judge VILLEMEZ and Judge BRYANT concur.

Charleston, South Carolina and Miramar, California; and the proceedings were being conducted in Great Lakes, Illinois.